UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RAY WILLIAMS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:19-cv-01993-MHH |
| } | |
| **UNITED STATES PIPE AND** } | |
| **FOUNDRY COMPANY LLC,** } | |
| } | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

The parties in this FMLA case have filed cross-motions for summary judgment. In 2018, Mr. Williams requested intermittent FMLA leave to care for his wife's grandmother, Ms. Prowell. (Doc. 22, p. 4, ¶ 7). Ms. Prowell lived with Mr. Williams and his wife, had serious health concerns, and required full time care. (Doc. 21-1, p. 7, tp. 17; Doc. 25-39). Aetna, U.S. Pipe's third-party FMLA administrator, approved Mr. Williams for intermittent leave. (Doc. 26, pp. 5–6, ¶¶ 5, 8).

Unbeknownst to Mr. Williams, Aetna's policy provided that when an individual approved for intermittent FMLA leave took more than three consecutive days off, the intermittent FMLA leave unilaterally converted to continuous FMLA leave, and the individual had to provide additional certification. (Doc. 25-28).

1

Although FMLA absences are excused under U.S. Pipe's attendance point policy, failure to provide additional medical certification for Aetna's approval results in U.S. Pipe's conversion of pre-approved FMLA absences to unexcused absences which produce disciplinary points. (Doc. 22, p. 6, ¶ 14). Mr. Williams was instructed to provide additional medical certification twice for pre-approved FMLA absences in December 2018 and January 2019. (Doc. 22, pp. 5–6, ¶¶ 10–13).[1]

Mr. Williams alleges that miscommunication surrounding his approved FMLA leave and difficulties providing additional medical certifications caused U.S. Pipe to terminate his employment three times over the course of three to four months. (Doc. 1, p. 6, ¶ 28). The third and final termination occurred because Mr. Williams submitted the medical certification U.S. Pipe required less than 24 hours past U.S. Pipe's internal deadline, so he was, as his supervisor allegedly stated while firing him, "a day late and a dollar short." (Doc. 21-1, p. 44, tp. 165; Doc. 22, p. 8, ¶¶ 21–23; Doc. 26, p. 21, ¶ 46). U.S. Pipe argues that Mr. Williams failed to provide

---

[1] An employer may require "subsequent recertifications on a reasonable basis." 29 U.S.C. § 2613(e). The Code of Federal Regulations allows for recertification requests less than 30 days apart if "[c]ircumstances described by the previous certification have changed significantly (e.g., the duration or frequency of the absence, the nature or severity of the illness, complications)." 29 C.F.R. 825.308(c)(2). "US Pipe defined the significant change in circumstances that required a new medical certification as being off three or more days." (Doc. 34, p. 11). There is no evidence to suggest that Ms. Prowell's medical condition changed significantly—in contrast, Ms. Prowell's medical care provider indicated that the probable duration of her condition was "until end of life." (Doc. 25-39, p. 4). It is unlikely that the additional medical certifications for absences in December 2018 and January 2019, (Doc. 21-1, pp. 88–89, 105–110), differed from the medical certification used to approve Mr. Williams's intermittent FMLA leave on December 5, 2018, (Doc. 25-11).

necessary documents by an established deadline, which resulted in Mr. Williams accruing more than eight attendance points and being terminated in accordance with U.S. Pipe's attendance policy. (Doc. 22, p. 8, ¶¶ 22–23).

In a telephone conference with the parties on August 1, 2022, the Court denied the parties' motions for summary judgment on the record. This opinion briefly summarizes the Court's reasoning.

## I.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw

reasonable inferences from that evidence in favor of the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). "[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of certain evidence, the court cannot make credibility determinations; that is the work of jurors. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Ala. Mun. Ins. Corp. v. Scottsdale Ins. Co.*, 297 F. Supp. 3d 1248, 1252 (N.D. Ala. 2017) (quoting *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1242–43 (N.D. Ga. 2014)).

## II.

With respect to U.S. Pipe's motion, (Doc. 20), disputed questions of fact preclude summary judgment as to Mr. Williams's FMLA interference and retaliation claims. In a letter approving Mr. Williams's request for intermittent leave, (Doc. 25-11), Aetna indicated that Mr. Williams was approved for intermittent leave between December 3, 2018 and March 2, 2019. According to the letter, Aetna "already told [Mr. Williams] that [he is] *eligible* for leave." (Doc. 25-11, p. 2) (emphasis in original). The letter notifies Mr. Williams that if he is "out more often than this estimate or for longer stretches of time, [he] may need to get a new certification." (Doc. 25-11, p. 2). But there is no mention in the letter that Mr. Williams's leave would convert to continuous leave and require a new certification if he took more than three consecutive days off. Based on the record, Mr. Williams appears to have complied with all requirements for intermittent leave.

The Court finds persuasive Mr. Williams's argument that it was U.S. Pipe's/Aetna's responsibility to screen Mr. Williams's request for FMLA leave. Aetna had the opportunity to deny Mr. Williams's request, and as the third-party administrator hired to handle FMLA leave for U.S. Pipe, Aetna was far more knowledgeable about the statutory requirements of the FMLA than Mr. Williams as a layperson. Regardless of whether Mr. Williams listed "grandmother" or "grandmother-in-law" on his request, neither relationship is, on its face, covered by

5

the FMLA. 29 U.S.C. § 2612(a)(1). "In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA–qualifying." 29 C.F.R. § 825.301(a). Aetna had several opportunities to inform Mr. Williams that he could not use FMLA leave to care for Ms. Prowell, but Aetna never declined coverage for that reason.

In this circuit, federal common law equitable estoppel requires: "(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation." *Dawkins v. Fulton Cty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013) (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008)). The Eleventh Circuit has twice declined to decide whether equitable estoppel should apply to the FMLA. *See Dawkins*, 733 F.3d at 1089; *Cowman Northland Hearing Ctrs, Inc.*, 628 Fed. Appx. 669, 672 (11th Cir. 2015). But when the Eleventh Circuit decided *Dawkins*, "[a]ll of the other circuits to address the issue [] concluded that the equitable estoppel doctrine applies in FMLA employment discrimination cases when its elements are met." *Dawkins*, 733 F.3d at 1092

(Wilson, J., dissenting) (citing cases from the Second, Fifth, Sixth, and Eighth Circuits).

In the absence of contrary authority from the Eleventh Circuit, equitable estoppel applies in this matter. Before Mr. Williams sued U.S. Pipe, the parties proceeded under the assumption that Mr. Williams was exercising his federally protected FMLA rights. U.S. Pipe and Aetna represented that Mr. Williams was eligible and approved for FMLA leave to care for Ms. Prowell. (Doc. 25-11). U.S. Pipe and Aetna knew that Mr. Williams had requested leave to care for his "grandmother," a family member not covered by the FMLA. (Doc. 22, p. 4, ¶ 7). U.S. Pipe and Aetna sent the FMLA approval letter, understanding that Mr. Williams would act on it. Mr. Williams, as a layperson, did not know that he was ineligible for FMLA leave to care for Ms. Prowell. (Doc. 32-1, pp. 2, 4, ¶¶ 2, 16; Doc. 33, pp. 11–12). Mr. Williams relied on FMLA approval to take FMLA leave to care for Ms. Prowell; Mr. Williams contends that without FMLA approval, he would have used personal or vacation days to care for Ms. Prowell. (Doc. 32-1, p. 4, ¶ 14; Doc. 33, p. 14). Mr. Williams's attempted FMLA leave ultimately resulted in an accumulation of attendance points and termination.

Mr. Williams's termination for absences cannot be divorced from his attempts to take FMLA leave. Accordingly, viewing the evidence in the light most favorable

to Mr. Williams, the Court denies U.S. Pipe's motion for summary judgment. (Doc. 20).

With respect to Mr. Williams's motion for summary judgment, viewing the evidence in the light most favorable to U.S. Pipe, genuine issues of material fact similarly preclude summary judgment. (Doc. 24). A jury must resolve the various disputed issues of fact in this case.

**DONE** and **ORDERED** this August 4, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE